FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,         ) | Magistrate Case No. 07MJ2423 |
| )  | |
| Plaintiff,         ) | **AMENDED** |
| ) | COMPLAINT FOR VIOLATION OF: |
| v.         ) | |
| ) | Title 8 U.S.C., Sec. 1324 (a)(1)(A)(ii) |
| Steven William SMITH,         ) | Transportation of Illegal |
| Oscar Daniel JIMENEZ-Pena,         ) | Aliens |
| ) | |
| Defendant(s).         ) | |

The undersigned complainant, being duly sworn, states:

On or about **October 9, 2007,** within the Southern District of California, defendants **Steven William SMITH** and **Oscar Daniel Jimenez-Pena** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Abraham ACEVEDO-Del Villar and Gabriel AGUILAR-Gonzalez,** had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **12th** DAY OF **OCTOBER, 2007**

Leo S. Papas
UNITED STATES MAGISTRATE JUDGE

CONTINUATION OF COMPLAINT:
Steven William SMITH
Oscar Daniel JIMENEZ-Pena

## AMENDED
## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that **Abraham ACEVEDO-Del Villar and Gabriel AGUILAR-Gonzalez** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On October 9, 2007 Senior Border Patrol Agent (SPA) C. Stone was assigned P.D. Transport duties for the Chula Vista Border Patrol Station. At approximately 2 A.M. Agent Stone responded to a request to meet with a San Diego Police Officer who stopped a suspected load van on southbound I-5 one quarter mile north of State Route 163 on ramp. When Agent Stone arrived he contacted Officer B. Hulbert who relayed the following information;

On October 9, 2007 Officer Hulbert was stationary in his police vehicle at the 7400 block of Girard Avenue. At approximately 1:50 A.M. officer Hulbert was flagged down by a passing motorist. The citizen hurriedly reported that he had just seen what he thought was a group of suspected illegal aliens entering a large size GMC Astro van with California license plates, from the beach near the children's pool in La Jolla. He hurriedly pointed saying that the van had gone northbound on Torrey Pines Road just a moment ago. Officer Hulbert immediately drove in this direction and searched the area until he came across a van matching the description and the license plate. The vehicle was taking the south bound on-ramp to Interstate 5 from eastbound La Jolla Parkway. Officer Hulbert relayed this information over the radio and proceeded to follow the van for further observation. He saw that the left tail light intermittently malfunctioned going on and off. When covering units arrived Officer Hulbert performed a vehicle stop. The van yielded on southbound Interstate 5 north of the 10th Street exit.

Officer Hulbert approached the van from the right side and immediately noticed numerous people lying down on all the floor areas behind the two front seats. Suspecting that this was a smuggling load he had the front seat passenger and the driver, later identified as defendant **William Steven SMITH**, exit the vehicle through the right front door where they were handcuffed upon exiting. The rest of the occupants were secured in similar manner as they exited through the right cargo door. All seven occupants were seated on the ice plant next to the parked van until Border Patrol arrived. Officer Hulbert observed that all of the occupants, including the defendant were wet with sand and water from their belt lines to their feet. He found various cell phones water proofed in plastic wrap, white and blue nylon life jackets, sand and seaweed in the cargo area of the van.

Shortly after SPA Stone arrived one of the secured passengers ran away and absconded. Before Agent Stone could interview him, the defendant began complaining about a medical problem related to his diabetic condition. Emergency medical services were called and at 3 A.M. the defendant was transported via ambulance to UCSD Medical Center for treatment.

Agent Stone identified himself to the remaining five occupants of the van as a Border Patrol Agent. Each of them admitted to being citizens of Mexico illegally present in the United States. All were taken into custody and transported Chula Vista Station for processing. At approximately 4:30 AM Supervisory Border Patrol Agent Wallace arrived at UCSD Medical Center and placed the defendant under arrest for alien smuggling.

**CONTINUATION OF COMPLAINT:**
Steven William SMITH
Oscar Daniel JIMENEZ-Pena

### DEFENDANT #1 STATEMENT: Steven William SMITH

On Wednesday October 10, 2007 at approximately 6:05 p.m., Senior Patrol Agent, J. Quintero conducted a sworn statement interview with the defendant, Steven William SMITH, at the UCSD Medical Center in San Diego, California. Prior to any questioning, the defendant was informed of his Miranda Rights. The defendant stated that he understood his rights and was willing to answer questions without an attorney present.

The defendant stated that he is a United States citizen, born in Denver, Colorado and that he currently resides in Tijuana, Baja California, Mexico.

The defendant stated that on Tuesday morning, October 9, 2007, at approximately 12:00 a.m., he received a call from Alfredo, asking him if he could pick up a group at the La Jolla Childrens Pool Beach. Alfredo instructed the defendant to be waiting because he was going to smuggle in two groups of illegal aliens through the beach that morning. The defendant stated that he arrived at the Childrens Pool Beach at approximately 1:00 a.m., and waited for about an hour. The defendant then received another call from Alfredo who informed him that they were close and to be ready. The defendant stated that at approximately 2:00 a.m., a group of five individuals got into his vehicle. The defendant stated that four people climbed in the back of his van, and one male individual that he knows as "El Aleman" climbed in the front passenger seat. The defendant stated that "El Aleman" usually crosses into the United States with the illegal alien groups and frequently helps him drive the load vehicles.

The defendant stated that after he picked up the first group he was going to transport them to a residence in Chula Vista, California, and then return to the Children's Pool Beach to pick up the second group. The defendant stated that at approximately 2:30 a.m., he was stopped by San Diego Police Officers as he was transporting the first group of illegal aliens. The defendant stated that as he was pulling over, "El Aleman" began telling him to run and not to pull over.

The defendant was shown with six Polaroid photographs of all individuals apprehended in this event. Each photograph was also individually numbered one through six. The defendant positively identified photograph #2 as the individual he knows as "El Aleman." The individual pictured in photograph #2 has been identified as, the co-defendant, Oscar Daniel JIMENEZ-Pena.

Agent J. Quintero asked the defendant if he was aware that the people he was transporting were illegal aliens, to which the defendant answered "Of course, why else would they be sneaking in the middle of the night on a boat with no lights."

CONTINUATION OF COMPLAINT:
Steven William SMITH
Oscar Daniel JIMENEZ-Pena

### DEFENDANT #2 STATEMENT: Oscar Daniel JIMENEZ-Pena

On Thursday, October 11, 2007, at approximately 10:07 a.m., Senior Patrol Agent O. Quintero advised Oscar Daniel JIMENEZ-Pena of his Miranda rights in the Spanish language and asked if he had understood those rights. JIMENEZ said that he understood his rights, and was willing to answer questions without the presence of an attorney.

JIMENEZ said that he is an undocumented Mexican national. JIMENEZ stated that he was born in Puerta Vallarta, Jalisco, Mexico.

When confronted with the fact that he had been identified as a co-principal and participant in the smuggling event, JIMENEZ initially denied being a smuggler and stated that he had been crossing into the United States in order to obtain work.

JIMENEZ then recanted and stated that he had in fact been smuggling the group of undocumented aliens together with the driver of the van, later identified as defendant #1 SMITH, whom he stated was known to him as "El Estiven."

JIMENEZ said that he had a history as a foot guide in the past and that he had been apprehended about 20 times by the Border Patrol. He characterized his participation as being the "helper" to another foot guide.

JIMENEZ stated that he initially intended to make smuggling arrangements for himself to be crossed, however, upon finding out that he had smuggled aliens in the past, a known smuggler offered him work as a smuggler, accompanying the smuggled aliens on the sea voyage, providing them directions, and then once ashore, getting them to and loading them inside the pick up vehicle. JIMENEZ stated that he agreed, and that he was to be paid $300.00 (USD) for each successful trip.

JIMENEZ said that he had smuggled aliens with this organization four times since arriving back in Tijuana. He stated that he had successfully smuggled three times in the last two weeks. JIMENEZ stated that each time they would smuggle, once ashore he was picked up by a driver, later identified as defendant #1 SMITH.

JIMENEZ said that late Monday afternoon, at around 5:00 p.m. a taxi arrived to take him to the departure point. This was a fishing village where he and the smuggled aliens gathered to wait. They were waiting at one of the restaurants, at the beach, and a fishing launch arrived with two of the local fisherman operating it. The seven of them, JIMENEZ and the six smuggled aliens, got into the boat. He stated that it was dark and between 6:00 and 7:00 p.m. when they embarked in the fishing boat.

JIMENEZ said that they traveled for about an hour before stopping and waiting, in an area where there were some rocks. He stated that he believed that he had heard someone refer to the area as "Coronado Island". They waited in that area for about 3 hours before the second boat came and rendezvoused with them. JIMENEZ said that he was asleep until the larger boat pulled alongside them. JIMENEZ described the larger vehicle as a bay liner type vessel. JIMENEZ said that there were two men crewing the bay liner, and that he and the six smuggled aliens climbed aboard.

**CONTINUATION OF COMPLAINT:**
Steven William SMITH
Oscar Daniel JIMENEZ-Pena

After about two hours of traveling, they reached the shoreline, and JIMENEZ stated that he led the smuggled aliens ashore. JIMENEZ stated that he knew that they were entering the United States at that point. JIMENEZ said that it was his job to lead the people ashore and get them into the load van. JIMENEZ said that he told the smuggled aliens to lie down on the rear floorboard of the van, and that he then sat down in the passenger seat. JIMENEZ said that "Estiven", later identified as defendant #1 SMITH, was driving the van.

JIMENEZ said that they drove for about ten minutes, and then a police car pulled them over. When asked, JIMENEZ said that he was aware that the people he was smuggling did not have documents allowing them to be in or enter the United States legally.

JIMENEZ was shown a set of 6 Polaroid photographs of all of the subjects detained in the smuggling event. He identified photo #6 as "Estiven" the driver of the load van. Polaroid photo #6 is defendant Steven William SMITH. JIMENEZ stated that he was unable to recognize any of the other photographs and that as far as he knew they were all smuggled aliens.

**MATERIAL WITNESSES STATEMENTS:**

Material witnesses Abraham ACEVEDO-Del Villar and Gabriel AGUILAR-Gonzalez admit to being citizens and nationals of Mexico illegally present in the United States. All agree in summary to the following; all admit to making arrangements to be smuggled into the United States by means of crossing United States territorial waters. They were to pay in amounts ranging from $1800 to $3000 US Dollars. On October 8, 2007 all were taken by taxi to Rosarito, Baja California, Mexico. They were driven to the water's edge where seafood restaurants and fishing boats were nearby. They were told to go to an awaiting boat. It was approximately six meters long by two meters wide open boat that had no seats and appeared to have been stripped bare except for a motor at the back. Two men in the boat, possibly smugglers, directed them to board in. A group of approximately 7 people boarded the boat and were taken out to sea.

The crew of the boat told them that if they were ever stopped by law enforcement to say that they were fishing. The boat traveled for about an hour and a half before it stopped in the ocean. They waited for about an hour before another boat arrived and pulled alongside them. It was a Bayliner type boat. The people were transferred to the second boat. The second boat then pulled away with them. They traveled for several hours guiding on the city lights until arriving near shore. The pilot of the boat told them to run to a nearby van he was pointing to. The group jumped into waist deep water and waded ashore where they ran to an awaiting van. The rear cargo door was open and all went to the back of it. The defendant stated that one of them could sit in the front passenger seat. The co-defendant JIMENEZ then climbed into the seat. They drove for about 10 minutes before being stopped by the police. All material witnesses identified the defendant as the driver through up photographic line-up.